UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MELANIE TAYLOR,<br><br>    Plaintiff,<br><br>    v.<br><br>ERIC K. SHINSEKI, et al.,<br><br>    Defendants. | Civil Action No. 13-1416 (JDB) |

## MEMORANDUM OPINION

Plaintiff Melanie Taylor brings this action against defendants Eric Shinseki, in his official capacity as Secretary of the U.S. Department of Veterans Affairs ("VA"), Mary Andrus, a/k/a Mary Charles, and Barbara Nugent. Taylor asserts claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; under the Rehabilitation Act, as amended, 29 U.S.C. § 701; and under various state laws. Pl.'s 3rd Amend. Compl. [ECF No. 22] ("Compl.") 1. She seeks injunctive and monetary relief for alleged discrimination and retaliation on the basis of her sex, race, disability, and prior protected activity. Id. Defendant Shinseki[1] moved to dismiss the complaint or, in the alternative, to transfer. Although the Court concludes that venue is proper in the District of Columbia, it will transfer the case to the Western District of Louisiana for the convenience of parties and witnesses and in the interest of justice.

## BACKGROUND

Taylor is an African-American female nurse, employed by the VA Medical Center in Alexandria, Louisiana. Compl. ¶ 8. Mary Andrus is Taylor's former coworker, and Barbara Nugent is Taylor's second-level supervisor. Id. ¶¶ 10, 12. Taylor alleges that Andrus harassed

---

[1] Defendants Andrus and Nugent have not yet responded to the complaint or appeared in this action, and hence they do not join in the motion.

her in the workplace and physically threatened her. Id. ¶¶ 13-20. As a result, Taylor filed an Equal Employment Opportunity ("EEO") complaint against Andrus. Id. ¶ 31. After an administrative investigation, Andrus was permanently reassigned, and the EEO office for the VA issued a final decision finding that Taylor proved she had been harassed based on sex. Id. ¶¶ 34-35. As for Nugent, she was apparently the subject of a previous EEO harassment complaint filed by Taylor for unspecified misconduct, and Taylor alleges that Nugent downgraded her performance review in retaliation for her complaint. Id. ¶¶ 38-41. Taylor does not dispute that all of these actions took place in Louisiana. After receiving the EEO decision, she filed this action on September 18, 2013. Defendants Andrus and Nugent have yet to respond to the complaint, while defendant Shinseki has now moved to dismiss for lack of subject-matter jurisdiction as to Andrus and Nugent and for lack of venue, or to transfer the case.

## STANDARDS OF REVIEW

Federal courts have leeway to "choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999)). "[C]ertain nonmerits, nonjurisdictional issues may be addressed preliminarily, because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'" Pub. Citizen v. U.S. Dist. Court for D.C., 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting Sinochem, 549 U.S. at 431) (internal quotation marks omitted). Thus, it is appropriate for this Court to decide defendants' challenge to venue before addressing the challenge to subject-matter jurisdiction. See Shay v. Sight & Sound Sys., Inc., 668 F. Supp. 2d 80, 82 (D.D.C. 2009) ("[A] court may decide questions of venue before addressing issues of personal or subject matter jurisdiction."); Aftab v.

Gonzalez, 597 F. Supp. 2d 76, 79 (D.D.C. 2009) ("Adjudicative efficiency favors resolving the venue issue before addressing whether subject matter jurisdiction exists.").

In ruling on a motion to dismiss for improper venue, the Court must accept all well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the plaintiff. Darby v. U.S. Dep't of Energy, 231 F. Supp. 2d 274, 277 (D.D.C. 2002); 2215 Fifth St. Assocs. v. U-Haul Int'l, Inc., 148 F. Supp. 2d 50, 54 (D.D.C. 2001). But the Court need not accept as true inferences that are unsupported by the facts set out in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). It may consider material outside of the pleadings. Cooper v. Farmers New Century Ins. Co., 593 F. Supp. 2d 14, 18 (D.D.C. 2008) (noting that "[w]hen deciding a Rule 12(b)(3) motion to dismiss for lack of venue, the court may consider extrinsic evidence"); Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject-matter jurisdiction.") (citing Land v. Dollar, 330 U.S. 731, 735 n.4 (1947)). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." Williams v. GEICO Corp., 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (internal quotation marks and citation omitted); see also 15 Charles Alan Wright et al., Federal Practice and Procedure § 3826, at 258 (2d ed. 1986 & Supp. 2006) ("[W]hen [an] objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue.").

**ANALYSIS**

Shinseki argues that Taylor's complaint should be dismissed for improper venue and lack of subject-matter jurisdiction. Having determined that it is usually appropriate to assess venue before subject-matter jurisdiction, the Court first turns to the propriety of venue in this district.

**I.    Venue May Be Proper In This District**

Venue in Title VII cases is not set by the general venue statute, 28 U.S.C. § 1391, but rather by the venue provision in 42 U.S.C. § 2000e–5(f)(3). See Stebbins v. State Farm Mut. Auto. Ins. Co., 413 F.2d 1100, 1102 (D.C. Cir. 1969) (per curiam); accord Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 8 (D.D.C. 2003). Under Title VII, a plaintiff may bring suit: (1) where "the unlawful employment practice is alleged to have been committed," (2) where "the employment records relevant to such practice are maintained and administered," or (3) where "the aggrieved person would have worked but for the alleged unlawful employment practice." § 2000e–5(f)(3). Only if the defendant is not found within any of these districts can a plaintiff rely on a fourth possible location—"the judicial district in which the respondent has his principal office." Id. This venue statute governs all Title VII claims and supersedes any other venue provision governing actions in federal court. See Stebbins, 413 F.2d at 1102; Middlebrooks v. England, No. 05-0556, 2005 WL 3213956, at *2 (D.D.C. Nov. 2, 2005). Shinseki argues that venue is improper in the District of Columbia under any of Title VII's four venue categories, and that this case should therefore be dismissed or transferred to the Western District of Louisiana where venue is proper. See Def.'s Mot. to Dismiss or Transfer [ECF No. 27] ("Def.'s Mot.") 5; Fed. R. Civ. P. 12(b)(3).

To determine venue under Title VII, courts apply a "commonsense appraisal" of events having operative significance. See James v. Booz-Allen & Hamilton, 227 F. Supp. 2d 16, 20

4

(D.D.C. 2002) (citing Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir. 1978)). The unlawful employment practices here were allegedly committed in the Western District of Louisiana. According to Taylor, she was harassed, discriminated against, and retaliated against in her workplace in Louisiana, by a coworker and a supervisor who both work in Louisiana. See Compl. ¶¶ 13-41. Nevertheless, she claims that Shinseki somehow discriminated against her in this district because the EEO decision (as well as a new anti-discrimination policy, which she argues was created in response to her complaint) was purportedly created in the District of Columbia. She further argues that because Shinseki was named as the respondent in her EEO complaint, he had actual knowledge of her discrimination, and that the adjudication of her EEO complaint thus somehow qualifies as discrimination occurring in this district. See Def.'s Mot. at 6-7. But the venue statute speaks of "unlawful employment practices," and Taylor has not alleged that any conduct amounting to an unlawful employment practice—she does not complain of irregularities in the adjudication process—occurred in this district. See § 2000e–5(f)(3). Hence, venue is not proper in the District of Columbia based on the first statutory category of venue; rather, it is proper in the Western District of Louisiana.

Similarly, venue is also improper under the fourth catch-all venue category: Taylor does not argue that defendants cannot be found in any district—and indeed she could not, since venue would be proper in the Western District of Louisiana under the first category because the unlawful employment practices are alleged to have been committed there. Slaby v. Holder, 901 F. Supp. 2d 129, 135 (D.D.C. 2012) ("fourth residual basis for [venue] is only available 'when the defendant cannot be found within any of the districts provided for by the first three bases'") (internal quotation marks and citations omitted); James, 227 F. Supp. 2d at 24 (if "analysis of the first three prongs reveals that the plaintiff could properly assert venue in several other districts,"

5

court need not consider fourth). Taylor also does not assert that she would have worked anywhere besides Louisiana but for the challenged employment practices, so the third venue category at issue does not apply here. See § 2000e–5(f)(3).

That leaves the second category as a possible basis for venue in this district: under that provision, venue lies where "the employment records relevant to [the unlawful employment practice] are maintained and administered." § 2000e–5(f)(3). Courts in this district have interpreted this provision to mean that venue is proper in only one district: where the "master set" of employment records is located. Khalil v. L-3 Commc'ns Titan Grp., 656 F. Supp. 2d 134, 136 (D.D.C. 2009) (venue is proper "where the complete master set of Plaintiff's relevant employment records are maintained and administered, not merely where any records happen to be located"); James v. Verizon Servs. Corp., 639 F. Supp. 2d 9, 13 (D.D.C. 2009) ("Congress explicitly limited venue under the second prong to the one judicial district in which the complete set of relevant employment records is located." (citing § 2000e–5(f)(3))). And indeed, the statute speaks of "the" district—not "a" district—where the relevant employment records are located. § 2000e–5(f)(3).

But this formulation of the statute—and subsequent interpretive gloss—reveals that Congress drafted the statute before the widespread use of computerized and cloud-based storage for employee records. When personnel records are physical files, grounding venue where the complete set of files is located is efficient and convenient. On the other hand, when those records are electronic, the question of where the "master set" is "maintained and administered" is quite nearly metaphysical; moreover, when records are accessible anywhere, the location of any "master set" necessarily has less import for the convenience of a particular forum. Nevertheless, other courts in this district have held that the mere electronic accessibility of the "master set" of

6

records from other districts does not provide an adequate basis for venue. See Valerino v. Holder, No. 13-1326, 2013 WL 6529203, at *2 (D.D.C. Dec. 13, 2013) ("The electronic accessibility of documents in [a] district does not satisfy [§ 2000e–5(f)(3)'s] second provision . . . because the statute contemplates venue in the single judicial district where the records are 'maintained and administered,' not wherever records could be accessed.") (citation omitted); Abou-Hussein v. Mabus, No. 12-0913, 2013 WL 3753553 (D.D.C. July 17, 2013) (same).

In other words, the advent of electronic records—and the corresponding ability to maintain and administer them from any district—complicates the application of this seemingly outdated provision. Imagine that the VA maintains a "master set" of an employee's records on a server in Virginia, that a human resources ("HR") representative in D.C. reviews and makes changes to those records, that another HR representative in Louisiana also reviews and makes changes to them, and that the employee herself accesses them while she is on vacation in Florida. In which district are "the employment records relevant to [the unlawful employment practice] maintained and administered"? See § 2000e–5(f)(3) (emphasis added). Another example: perhaps the records are on a server in Nevada, but they are accessible only to the HR representative who works in the same office as the employee in Louisiana. One possible reading of the statute in this situation is that the "master set" of records is maintained in Nevada but administered in Louisiana, meaning that in no district are the records both maintained and administered. Put differently, interpreting the statute to mean that venue is proper in that one district where the "master set" is located does not cure the problems caused by electronic recordkeeping. And burdening a plaintiff with an obligation to produce evidence from an employer on where, exactly, the electronic records should be deemed to exist in the physical

7

world is contrary to Congress's intent to provide a convenient venue—and the courts' interest in adjudicative efficiency. Cf. Aftab, 597 F. Supp. 2d at 79.

In this case, and on the current record, the Court cannot conclusively determine where the master set of relevant employment records is located. Citing an affidavit from a VA employee, Shinseki argues that "all records relevant to Ms. Taylor's employment, and therefore relevant to this case, are administered and stored within [the] Western District of Louisiana, at the [VA medical center] in Pineville, Louisiana." Decl. of Donald Hardison, Def.'s Mot. 6 Ex. 1 [ECF No. 27-1] ¶ 4. Taylor disputes this assertion by citing an affidavit from another VA employee, who avers that the "master set of all of Ms. Taylor's personnel records" is "controlled, administered and maintained in the eOPF system within the Department of Veteran Affairs in the District of Columbia." Decl. of Pamela Mendez, Pl.'s Opp'n Ex. 1 [ECF No. 29] ¶ 11 (emphasis omitted). An "eOPF" is the electronic version of a governmental Official Personnel Folder, part of the Office of Personnel Management's employee record management system.[2] The custodian "responsible for the maintenance" of Taylor's eOPF is the VA, because it is "the agency that has primary access to [her] eOPF." See 5 C.F.R. § 293.303(d)(1)-(2). The VA's headquarters are located in the District of Columbia, and it is reasonable to infer that the eOPF system is centrally maintained in and administered from that office.[3]

This conflicting evidence distinguishes this case from two cases recently decided in this district. In both Valerino, 2013 WL 6529203, at *2, and Abou-Hussein, 2013 WL 3753553, at *4, the plaintiff argued only that the accessibility of the records in a particular district satisfied the second provision, in the face of uncontroverted evidence from the defendant that the records

---

[2] See Frequently Asked Questions, Personnel Documentation, OPM.gov, available at http://www.opm.gov/faqs/topic/personneldoc/index.aspx.
[3] To be sure, this inference may be at odds with the physical location of the server that maintains those records, but on this record the Court cannot determine where that may be—underscoring the issues created by electronic records.

were maintained and administered elsewhere. Here, Taylor has produced evidence that the records are maintained and administered in this district, while the VA has produced evidence that the records are maintained and administered in Louisiana. This case thus squarely presents the Court with the task of determining who is right about the "physical location" of the records. Confronted with this directly conflicting evidence and a now-imprecise statute, and cognizant that it must draw all reasonable inferences in Taylor's favor, the Court concludes that the "relevant employment records" here can fairly be said to exist in both Louisiana and D.C. This conflicts, however, with the statute's command that venue is proper in "the" district where the records are maintained and administered. Fortunately, the Court need not resolve this tricky issue, for it finds that even if venue is proper in D.C., transfer to the Western District of Louisiana is the appropriate outcome. Still, Congress might consider revising the statute to save courts trying to resolve this issue in future cases from spinning their wheels.

**II.      Even Though Venue May Be Proper In This District, Transfer Is Appropriate**

Even though venue may be proper in this district, the Court will transfer the case to the Western District of Louisiana. District courts have discretion to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Taylor opposes Shinseki's motion to transfer. Courts assess motions to transfer venue according to an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). However, "a court may not transfer a case from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." Sierra Club v. Van Antwerp, 523 F. Supp. 2d 5, 11

(D.D.C. 2007) (internal quotation marks omitted). The moving party bears the initial burden of establishing that transfer is proper. S. Utah Wilderness Alliance v. Lewis, 845 F. Supp. 2d 231, 234 (D.D.C. 2012).

The threshold requirement of section 1404(a) is met here: the transferee forum is a district "where [the action] might have been brought." § 1404(a); see Thayer/Patricof Educ. Funding v. Pryor Res., Inc., 196 F. Supp. 2d 21, 32 (D.D.C. 2002). Venue is proper in the Western District of Louisiana under the first provision of 42 U.S.C. § 2000e–5(f)(3). All defendants are subject to specific personal jurisdiction in that district as well, because the acts or omissions giving rise to the action all occurred there, and indeed two of the defendants reside in Louisiana. See supra Part I; Compl. at 1.

In deciding whether the "convenience of parties and witnesses" and "the interest of justice" warrants transfer, courts have identified several relevant factors. Mirroring the statutory language, these factors fall under two broad headings: private-interest factors and public-interest factors. See Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). "[I]f the balance of private and public interests favors a transfer of venue, then a court may order a transfer." Montgomery v. STG Int'l, Inc., 532 F. Supp. 2d 29, 32 (D.D.C. 2008).

  a.  **Private-interest Factors**

In determining whether "the convenience of parties and witnesses" favors transfer, courts consider the following private-interest factors: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts; and (6) the ease of access to

sources of proof. Id. at 32-33; see Trout Unlimited, 944 F. Supp. at 16. The Court considers each factor in turn.

### 1. Taylor's forum choice weighs slightly against transfer

The plaintiff's choice of forum is a "paramount consideration in any determination of a transfer request." Thayer/Patricof, 196 F. Supp. 2d at 31 (internal quotation marks omitted). But "when the chosen forum is not the plaintiff's home forum . . . and when the defendant seeks transfer to the plaintiff's home forum," deference to the plaintiff's choice is diminished. Bederson v. United States, 756 F. Supp. 2d 38, 46 (D.D.C. 2010). That is the case here. Hence, at most, this factor weighs slightly against transfer.

### 2. Shinseki's forum choice favors transfer

Although the defendant's choice of forum is a consideration when deciding a section 1404(a) motion, it is not ordinarily entitled to deference. See Mahoney v. Eli Lilly & Co., 545 F. Supp. 2d 123, 127 (D.D.C. 2008). And "[w]hen the home forum has been chosen," as here, "it is reasonable to assume that this choice is convenient." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981). Because Shinseki seeks to transfer to Taylor's home forum, this factor weighs in favor of transfer.

### 3. Where the claim arose favors transfer

When the material events that form the factual predicate of the plaintiff's claim did not occur in the plaintiff's chosen forum, transfer is favored. Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior, 669 F. Supp. 2d 88, 95 (D.D.C. 2009). Here, the unlawful employment practices were allegedly committed in the Western District of Louisiana. Hence, this factor favors transfer.

####    4.      Convenience of the parties favors transfer

Taylor and the two individual defendants both reside in Louisiana. <u>See</u> Compl. at 1. Hence, this factor favors transfer.

####    5.      Convenience of witnesses favors transfer

The convenience of the witnesses has been described as "the most critical factor" to examine when deciding a motion to transfer. <u>Pyrocap Int'l Corp. v. Ford Motor Co.</u>, 259 F. Supp. 2d 92, 97 (D.D.C. 2003) (quoting <u>Chung v. Chrysler Corp.</u>, 903 F. Supp. 160, 164 (D.D.C. 1995)). Trying this case in Louisiana would be convenient because the witnesses' location in the Western District of Louisiana would minimize or eliminate problems with procuring their testimony. Compulsory process over witnesses is often "essential" to getting a "full and true disclosure of the disputed facts." <u>FTC v. Brigadier Indus.</u>, 613 F.2d 1110, 1115 (D.C. Cir. 1979) (internal quotation marks and citation omitted). Hence, the likely availability of compulsory process for important witnesses in the transferee forum weighs in favor of transfer.

####    6.      Ease of access to sources of proof is neutral

Modern technology allows most documentary evidence to be easily transferred. <u>Thayer/Patricof</u>, 196 F. Supp. 2d at 36. Hence, the location of documents is much less important to determining the convenience of the parties than it once was. <u>Id.</u> To the limited extent that "ease of access to sources of proof" is still significant to the section 1404(a) determination, then, this factor is neutral.

The Court finds that on balance, the private-interest factors in this case weigh in favor of transfer.

### b. Public-interest Factors

To determine whether "the interest of justice" favors transfer, courts consider the following public-interest factors: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of each court; and (3) the local interest in deciding local controversies at home. Montgomery, 532 F. Supp. 2d at 34; see also Trout Unlimited, 944 F. Supp. at 16. In addition, limitations on jurisdiction and venue (under 28 U.S.C. § 1391) are usually adequate safeguards of the public interest. The Court will consider each factor in turn.

#### 1. Transferee court's familiarity with governing law favors transfer

In addition to her Title VII claims, Taylor asserts state law claims. When a case is transferred under section 1404(a), the transferee court is "obligated to apply the state law that would have been applied if there had been no change of venue." Van Dusen, 376 U.S. at 639. This principle requires D.C. choice of law, as it pertains to the governing substantive law, to apply in this case. See id.; Ferens v. John Deere Co., 494 U.S. 516, 532-33 (1990). Under D.C. choice-of-law analysis, when one state's policies would be advanced by applying its substantive law in a tort case, and another state's policies would not, there is a false conflict, and the law of the interested state must apply. See, e.g., Herbert v. District of Columbia, 808 A.2d 776, 779 (D.C. 2002). Applying Louisiana tort law to a Louisiana injury advances Louisiana policies, but applying D.C. tort law to a Louisiana injury would not advance D.C. policies. Thus, D.C. choice of law mandates application of Louisiana substantive tort law. See id. The Western District of Louisiana's experience interpreting Louisiana tort law will help ensure that this litigation is conducted in a just and efficient manner. Hence, this factor also favors transfer.

2. <u>Relative congestion of each court slightly favors transfer</u>

This factor is weighed by comparing the districts' median times from filing to disposition or trial. <u>Pueblo v. Nat'l Indian Gaming Comm'n</u>, 731 F. Supp. 2d 36, 40 n.2 (D.D.C. 2010). Median time from filing to disposition weighs slightly against transfer: 8.7 months in this district, compared to 12.9 months in the Western District of Louisiana.[4] From filing to trial, it favors transfer: 42.1 months in this district, compared to 28.8 months in the Western District of Louisiana.[5] In addition, plaintiffs have moved to transfer relatively early in this litigation, so any delay attributable to transfer is likely to be minimal. <u>Cf.</u> <u>Mahoney</u>, 545 F. Supp. 2d at 129 ("If the defendant had interposed its motion earlier in the litigation process, more of the equities would tilt to transfer."). Overall, then, this factor slightly favors transfer.

3. <u>Local interest in deciding local controversies at home favors transfer</u>

Each state has an "interest in redressing the harms of its citizens." <u>MacMunn v. Eli Lilly Co.</u>, 559 F. Supp. 2d 58, 63 (D.D.C. 2008). In addition, when litigation is not "handled at its origin," it often creates "administrative difficulties." <u>Ferens</u>, 494 U.S. at 530 (quoting <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508-09 (1947)). For example, "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." <u>Ferens</u>, 494 U.S. at 530. And holding a trial within the view of the interested community is preferable to holding it "where they can learn of it by report only." <u>Id.</u> Here, Taylor is a Louisiana resident who allegedly suffered injuries in Louisiana. It is reasonable to allow a court located in Louisiana to redress alleged harms to a Louisiana citizen. And if the case goes to trial, it would make little sense to burden District of Columbia residents with jury duty, or to hold the

---

[4] Adm. Office of the U.S. Courts, Judicial Caseload Profile for the District of Columbia & for the Western District of Louisiana as of September 30, 2013, <u>available at</u> http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2013.aspx.
[5] <u>Id.</u>

14

proceedings far away from interested Louisiana residents. This factor thus favors transfer as well.

The Court finds that each of the public-interest factors favors transfer. In sum, the Court concludes that considerations of convenience and the interest of justice weigh in favor of transfer to the Western District of Louisiana.

## **CONCLUSION**

For the foregoing reasons, the Court concludes that although venue for Taylor's action may be proper in the District of Columbia, under 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice, the Court will transfer this case to the Western District of Louisiana. A separate Order has issued this date.

/s/
JOHN D. BATES
United States District Judge

Dated: January 31, 2014